dence has been introduced tending or fairly tending to show that a person has authority to act as the agent for another, evidence of the acts of the agent under such claimed authority may be admitted. But there is nothing in this case to justify the admission of the statements as to agency claimed to have been made by George W. MacCallum to the plaintiffs. All of such evidence was duly objected to, and was received subject to the appellant's exceptions to the rulings thereon. On the record as it now stands, the receipt of such evidence was error, and requires a reversal of this judgment. The plaintiffs sought to show that George W. MacCallum had not been paid the full amount of $1,850 as provided by the contract. We have not considered that question, for the reason that the lien was filed against Mrs. Overacker as owner, and not against MacCallum as contractor, and the action was brought, tried, and decided upon the theory that MacCallum was the agent of the appellant.

Judgment reversed. New trial granted; costs to appellant tc abide the event. All concur, except SMITH, J., not voting.

---

(35 Misc. Rep. 540.)

OSWEGO CITY SAV. BANK v. BOARD OF EDUCATION OF UNION FREE SCHOOL DIST. NO. 2, TOWNS OF MANHEIM AND OPPENHEIM IN HERKIMER AND FULTON COUNTIES.

(Supreme Court, Special Term, Herkimer County. July, 1901.)

1. SCHOOL-DISTRICT BONDS—VALIDITY.

Under Laws 1895, c. 273, § 10, providing for the issue of bonds by a union free-school district for the purchase of school sites or structures, such a district may issue bonds for a school site and a school house already erected thereon, though a very small part of the price represents property not properly school property.

2. SALE—CASH PAYMENT.

A school district sold certain bonds at public auction at par to the agent of a private society owning a school house and its site. Such agent and a representative of the school district went to a bank, which furnished the purchase money, which the agent tendered and paid to the representative of the school district as the price of the bonds. The representative of the school district then tendered such money to the agent of the society owning the school house, and received therefor a deed of the site. *Held*, that the statute providing that school bonds shall be sold at par and for cash was complied with.

3. SAME—MUTILATED BONDS—REISSUE.

The bonds of a school district were originally written on a typewriter, but were declared by dealers in bonds to be unmarketable in that form. They were afterwards mutilated, and replaced by printed bonds of the same tenure. *Held*, that the printed bonds were validly executed.

Action by the Oswego City Savings Bank against the board of education of union free school district No. 2, towns of Manheim and Oppenheim, in the counties of Herkimer and Fulton, to recover on certain bonds issued by defendant. Judgment for plaintiff.

Elisha B. Powell, for plaintiff.
A. M. Mills, for defendant.

HISCOCK, J. There is practically no dispute of fact in this case. In 1895 there was a private educational corporation at Dolgeville, N. Y., known as the "Dolgeville School Association." It owned a school house and site, with fixtures and some personal property and appliances. The plan originated of a purchase of this property by the defendant for the sum of $18,000, said purchase price to be met by the issue of bonds. The proposition of sale made by the Dolgeville School Society showed a valuation of real estate of $19,-500, and a valuation of fixtures and personal property of $2,158.54, for all of which the school society agreed to accept the sum of $18,000. All of the personal property included in said valuation was naturally incident to the maintenance and operation of a school, and a large portion of it might be regarded as ordinary fixtures, such as desks, cupboards, racks, etc. The appraised valuation of the other personal property, which, perhaps, could not be regarded as fixtures naturally and necessarily appurtenant to a school house, did not exceed, upon the basis of $18,000 for the entire plant, a few hundred dollars. Steps which are conceded, upon the submission to me, to have been sufficient and properly and legally taken, were taken under the statute, through and at a meeting of the voters of the district, to authorize the acts and vote the taxes necessary for the purchase of this property; and subsequently the trustees of said school district took what are likewise conceded to have been the necessary and proper preliminary legal steps for an issue of bonds with which to pay for said property. As I have stated, no question is made, upon this submission to me, but what the necessary and proper legal and statutory steps were taken at the meeting of the voters of the district, and by the board of trustees, to authorize the purchase of the property in question, and the issue of bonds with which to provide means of paying therefor, subject to the claim of defendant that the purchase included the purchase of certain property which could not be met under the statute with an issue of bonds. The bonds were duly advertised and sold at auction in form as provided by statute. Upon such auction one Armstrong, who really represented the school society which was selling the property, bid off the bonds at par as provided by the statute. At the time he paid no cash for them, but subsequently he went with some officer representing the defendant to a bank in Herkimer. There Armstrong went through the form of tendering to the representative of the defendant $18,000 for the bonds purchased, and the representative of the defendant went through the form of tendering and paying said $18,000 to the representative of the selling school society for the property which was to be purchased as aforesaid. As a matter of fact, the $18,000 was furnished by the bank, and was not carried away by anybody, and the net result was that the selling school society got the $18,000 of bonds and the defendant obtained the deed for the property which was to be sold. These bonds which were so delivered had been duly executed by the proper officials of the defendant, and were regular in form and within the provisions of the statute. They were, however, struck off upon a typewriter. Subsequently one Alfred Dolge, who was the president of the board of education of the

defendant, and likewise a member of the executive committee of the Dolgeville School Society, the vendor, went to New York for the purpose of disposing of the bonds. He went to some brokers, who, in effect, told him that they could not dispose of typewritten bonds, but that it would be necessary to have them printed and struck off in the form usually adopted for such bonds. The brokers caused printed forms of bonds to be struck off, and subsequently sent them to Mr. Dolge, who had returned home. No. 1 of the original bonds was never reprinted or exchanged in any manner; but for the other 17 bonds of the issue Mr. Dolge procured the bonds, prepared under the supervision of the brokers, to be duly executed by the proper officials of the defendant in proper form, and subsequently he went with said second lot to New York to the brokers. The original typewritten bonds were canceled and mutilated by being cut up and slashed with a knife, and were delivered back to the defendant, through its president, Mr. Dolge. The brokers, taking the 17 newly-prepared bonds executed as aforesaid, paid the purchase price thereof, and subsequently, in the ordinary course of business, disposed of them; the one in question coming into the hands of the plaintiff, who paid value therefor and became a bona fide holder thereof. The original typewritten bonds, canceled and mutilated and delivered to Mr. Dolge, an officer and representative of the defendant aforesaid, seem to have been passed around some subsequently; it being claimed that they passed into the possession of the vendor school society above named. At any rate, no claim has ever been made upon them, or that they were still outstanding, nor have any of the coupons thereof been presented; but they have been produced upon the trial of this action and submitted as exhibits. For several years the defendant paid the coupons upon this and other bonds, and no question was raised in regard to their validity.

Upon these facts, the defendant insists that said issue of bonds, including plaintiff's, is invalid, for the following reasons, in substance: (1) That they were issued for the purpose of meeting the purchase price of the site, and a school house already standing thereon, and of certain personal property, and it is claimed that the statute did not authorize such issue. (2) That the transaction between Armstrong, the purchaser of the bonds, and the defendant, as it is claimed by defendant, amounted to an issue of the bonds for the purchase price of the property, and there was not a sale of the bonds for cash as contemplated by the statute. (3) The bonds, of which plaintiff's is one, were not the bonds originally executed by the defendant's officers, and, as claimed, the authority of such officers was exhausted when they signed and executed the typewritten bonds, and they had no power to execute the printed or lithographed bonds in the place thereof. I will discuss these defenses in the order stated.

1. Defendant's counsel does not argue very strenuously that these bonds are invalid because issued for the purpose of acquiring a site with a school house already on it, rather than for the purpose of acquiring a site and of then building a school house thereon, although he suggests that question. He argues more strenuously the proposition that this purchase included certain personal prop-

erty, and that, because the value of such personal property was included in the sum of $18,000 for which these bonds were issued, the entire issue is invalid. I am not able to conclude that bonds held by a bona fide holder, upon which interest has been paid without question for years, should be held invalid, because of any of the facts which appear in this case in respect to the two points suggested. That part of the section covering this subject, being section 10 of chapter 273 of the Laws of 1895, as amended, which relates to the issue of such bonds as these, should be considered and construed in the light of the preceding part of the section. Such preceding part of the section provides that:

"A majority of the voters of any union free school district * * * may authorize such acts and vote such taxes as they shall deem expedient for making additions, alterations or improvements to or in the sites or structures belonging to the district, or for the purchase of other sites or structures, or for a change of sites, or for the erection of new buildings, or for buying apparatus or fixtures."

The provision especially relating to the issue of bonds then says:

"For the purpose of giving effect to these provisions, trustees or boards of education are hereby authorized, whenever a tax shall have been voted to be collected in installments for the purpose of building a new school house, or building an addition to a school house, or making additions, alterations or improvements to buildings or structures belonging to the district, or for the purchase of a new site or for an addition to a site, to borrow so much of the sum voted as may be necessary * * * and to issue bonds," etc.

It will thus be seen that the provision of the statute governing the meeting of the residents of the district is broad enough to authorize the purchase of a site, or a building, or a site and a building, and also to authorize the purchase of personal property and fixtures, and then the board of education or the trustees are authorized to issue bonds "for the purpose of giving effect to these provisions." I think it would be a very narrow construction of the latter provision to hold that it authorized the issue of bonds with which to buy a site, or with which to build a building, but did not authorize the purchase of a site with a building already thereon, as in this case. The latter provision, with reference to the issue of bonds, certainly does not recapitulate in words all of the purposes for which the voters are authorized to vote and provide. It perhaps is incomplete in this respect, but certainly it is to be construed somewhat with reference to the first provisions. So with reference to the personal property which was involved in this purchase. Even if it should be held that the provisions directly relating to the issue of bonds excluded the purchase of personal property as one of the items for which bonds might be issued, I still think that the entire issue of bonds in the hands of bona fide purchasers should not be held invalid because an inconsequential item of that kind has been included in the aggregate sum. Manifestly, the value of what could be regarded as personal property in this case, as distinguished from furniture and fixtures naturally appurtenant to a school house, would be very insignificant as compared with the total amount. There seems to be no doubt but what the representatives of the defend-

ant acted in good faith in issuing the bonds in question, and, if they have made a mistake in including a small item of this kind in the total issue, it should be disregarded, as against such a holder of the bonds issued as plaintiff. It should rather be regarded as a mistake upon the part of the officers acting for and representing the defendant, with which the defendant should be charged, rather than a mistake or error so material and vital as to invalidate the entire issue of bonds.

2. The statute did require that the bonds issued by defendant should be sold at public auction, rather than that they should be passed to the society selling the property without sale. The provision of the statute with reference to a sale of said bonds at public auction was fully complied with. There is no question but what the sale was duly advertised, and but what it took place in due form, and Armstrong, who bid for the bonds, bid them off at such public auction. The sale was open to everybody, and anybody might have bid against him and secured the bonds. As he bid the full amount required by the statute,—par,—he secured the bonds. In view of the fact that they bore 3 per cent. interest, and of the year when they were sold, it will not be claimed that they sold at a disadvantageous price. Having passed this sale, we then find the vendor school society, through Armstrong, the purchaser of the bonds and the holder of the property to be sold, and find, upon the other hand, the defendant, the seller of the bonds and entitled to receive the purchase price of $18,000 therefor, and the purchaser of the school property in question, for which it was to pay $18,000. It is said that the passing of the money from Armstrong to the defendant for the bonds, and from the defendant to the society which Armstrong represented for the deed, was a mere form. Very possibly that was so. It would seem difficult to avoid having it more or less of a form. It was the right of the defendant to receive the money for the bonds. It was its duty immediately to pay it back to the person from whom it had been received for the deed, and receive the deed; and this was what was done. It is difficult to see how it could have been done much differently. It does not seem that it was necessary for the school society to take the $18,000 which it received from Armstrong, the purchaser of the bonds, and put it into the bank, and keep it there for a considerable length of time before using it, or to go to the trouble of taking $18,000 of other money with which to pay the school society for the deed. The main thing required by the statute, namely, a sale of these bonds at public auction, at which anybody could bid, was substantially fulfilled; and, that having taken place, I fail to see any such vice in the manner in which the transaction was closed up as would invalidate these bonds.

3. I pass, now, to a consideration of the third defense above outlined,—the execution of a second set of bonds with which the first (outside of bond No. 1) were replaced. It seems to me a somewhat narrow and stringent rule to hold that the signing and execution of new bonds, under the circumstances of this case, was a new and independent act upon the part of the officers of the de-

fendant, and that their authority had been so exhausted by the execution and signing of the typewritten bonds that they could not legally execute the latter set. The second set of bonds is in substantially the same form as the typewritten ones. There is no claim that an excessive number has been issued, or that any additional obligations have been imposed upon the defendant, or that any substantial variation has been made in the terms or obligations of the bond. The facts simply show that the typewritten bonds practically were not marketable, and that the new ones were issued in the customary form in order to make them marketable. That was the sole object of the change, and that was all that was done; and it would seem to me that the officers of the defendant would have the right to do this, and execute this second set for the accommodation of the purchaser, and that it would not be such a new and independent act as would be lacking in authority, and that their powers were not so exhausted by the signing of the first set as would prevent them from doing it. Assume that after the typewritten bonds had been signed and executed and delivered to the purchaser, and while he was still in the room, some accident had happened to one of the bonds which so mutilated and destroyed it as to render the bond useless. Would not the officers of the defendant have had the right to sit down and re-execute that bond, by giving him another one in the place of the one which had become destroyed? If, however, it be assumed that the defendant is right in its contention that the power of defendant's officers was exhausted by signing and executing typewritten bonds, I still think that the second set of bonds, issued in the place of said typewritten ones, were valid so far as plaintiff is concerned. I think the reasoning and decision in the case of Town of Solon v. Williamsburgh Sav. Bank, 114 N. Y. 122, 137, 21 N. E. 168, is decisive of this question in this case, and that, in view of the fact that the persons executing the bonds, of which plaintiff's is one, were in fact the officers and to a certain extent the representatives of the defendant; and in view of the fact that the necessary preliminary steps with which to clothe them with the authority to issue said bonds had been taken, and in view of the recitals in the bonds, and in view of the fact that the plaintiff is a bona fide purchaser, the bonds in question should be held good as against this defense. I, of course, do not lose sight of the fact that the case cited was an equity action brought by plaintiff to secure a cancellation of certain bonds. The fact, however, that the decision in that case proceeded very largely upon questions and issues of law, rather than principles of equity, is emphasized in the succeeding case of Williamsburgh Sav. Bank v. Town of Solon, 136 N. Y. 465, 32 N. E. 1058. And especially, upon this question under review, there is nothing in the action of the court in the case first cited to indicate that it was controlled by any principle of equity which would make its decision in that case inapplicable to the disposition of similar facts appearing in an action at law like the one at bar.

It is somewhat urged, in connection with this defense, that the original typewritten bonds are in the possession of the school so-

ciety which sold the school house, and that there ought not to be a recovery in this action, to which that society is not a party, with these bonds outstanding. I have already referred somewhat to the facts upon this point, and I am not able to regard these original bonds as outstanding or in the slightest degree in any position to menace this defendant. For several years nothing whatever has been heard from them in the way of a claim. As appears by their production upon the trial of this case, they are so mutilated and canceled that nobody could possibly be deceived or misled by them. Many of them are by their terms past due. After they were so canceled and mutilated, they were delivered and surrendered to Alfred Dolge, the president of this defendant; and there is, in my judgment, no possibility of any one ever resorting to them as a claim against the defendant. In accordance with these views, judgment is ordered for the plaintiff, with costs.

Judgment for plaintiff, with costs.